HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HUNT SKANSIE LAND, LLC and RUSHTALMO LLC, Washington Limited Liability Companies,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF GIG HARBOR, et al.,<br><br>Defendants. | Case No. C10-5027RBL<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. #13] AND PLAINTIFFS' MOTION TO REMAND AND ABSTAIN [Dkt. # 16] |

THIS MATTER comes before the Court on Defendants' Motion for Partial Summary Judgment [Dkt. #13], and Plaintiffs' Motion to Remand and Abstain [Dkt # 16]. The individual defendants, past and present members of the Gig Harbor City Council and their marital communities ("The Council"), seek summary judgment dismissal on all Plaintiffs' claims against them based on absolute and qualified immunity.

Plaintiffs Hunt Skansie Land, LLC, and Rush-Talmo, LLC, ("Hunt Skansie") ask the Court to remand their state law tort and constitutional claims to Pierce County Superior Court, and to abstain on the remaining 42 U.S.C. § 1983 claims before this Court pending resolution of the state claims in Pierce County Superior Court. The Court **GRANTS** Defendants' Motion for Partial Summary Judgment on Immunity [Dkt. #13],

and **DENIES** Plaintiffs' Motion to Remand and Abstain [Dkt. #16]. The reasons for the Court's Order are set forth below.

## BACKGROUND

Plaintiffs owned land upon which they planned to build a development called the Courtyards at Skansie Park ("Courtyards"), a 174-lot single-family home subdivision and Planned Residential Development (PRD) on 18.8 acres of property. On March 23, 2006, North Pacific Design ("NPD") applied on behalf of Plaintiffs for a permit to build the Courtyards development. [*1st Declaration of Carol A. Morris in Support of Defendants' Motion for Partial Summary Judgment on Immunity*, (hereinafter *Morris Dec.*), Dkt. #14, Ex. A]. The Gig Harbor Municipal Code (GHMC) allows a maximum density of 8 residential units per acre in a PRD. However, that density may be increased to 12 units per acre under a conditional use permit. NPD's preliminary plat proposed a density of 11.75 dwelling units per acre, which could only be achieved by reducing the lot size and yard setbacks of traditional PRDs. Thus, NPD also sought a reduced setback space, which was outside GHMC's open space requirement. [*Morris Dec.*, Dkt. #14, Ex. A, at i].

The City Planning Staff recommended approval of the preliminary plat despite NPD's unusual density and open space requests. [*Morris Dec.*, Dkt. #14, Ex. D]. According to the Planning Staff, the density increase (from 8 to 11.75 dwelling units per acre) could be achieved with a conditional use permit, but only if NPD complied with GHMC's open space requirements, of which the proposal was "approximately 26,382 square feet short." *Id*. at 9, 14.

Both parties agreed to submit the project to the Hearing Examiner for an "open record hearing," which was held on December 13, 2006. [*Morris Dec.*, Dkt. #14, Ex. H]. NPD disputed the City Planner's interpretation of the GHMC that required NPD to revise the preliminary plat to comply with open space requirements. Thus, initially, the only disputed issue for the Hearing Examiner was the conflicting interpretations of the GHMC's definition of open space. [*Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment,* (hereinafter *Plaintiffs' Response*), Dkt. #22 at 3]. But on December 19, 2006,

the City changed its position, arguing for the first time that the City Planner erred in concluding that a conditional use permit could be used to increase density in a PRD. [*Morris Dec.*, Dkt. #14, Ex. F]. The City did not object to the Hearing Examiner "leaving the record open" to receive a response from NPD on the density issue. *Id*. The Hearing Examiner allowed briefing from both sides on the issue, and considered both in his decision. *See id.* Ex. F, G, H.

The Hearing Examiner issued a final decision on January 27, 2007, conditionally approving NPD's applications for preliminary plat, PRD, and conditional use permits, but requiring NPD to comply with the City's open space requirements. [*Morris Dec*., Dkt. #14, Ex. H]. Thus, the Hearing Examiner ruled in favor of NPD on the density issue, but in favor of the City on the open space issue.

At their January 29, 2007 meeting, the Council considered a draft ordinance (Ordinance 1073) that would allow the Council to request reconsideration of a hearing examiner's decision immediately after the open record public hearing. The Council considered the ordinance under RCW 36.70A.390's emergency adoption process, which does not require a public hearing or public input before adoption. [*First Declaration of Molly Towslee in Support of Defendants' Motion for Partial Summary Judgment on Immunity* (hereinafter *Towslee Dec.*), Dkt. # 15, Ex. A]. The emergency ordinance was tabled at the January 29, 2007 meeting, and was subsequently passed on February 26, 2007.[1] [*Thair Jorgenson's Declaration in Support of Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment*, (hereinafter *Jorgenson Dec*.), Ex.C, at 3]. However, the City never used Ordinance 1073 to request reconsideration of the Hearing Examiner's decision on the Courtyards development.

On February 12, 2007, the Council met in a closed executive meeting "[f]or the purpose of discussing potential litigation per RCW 42.30.110(1)(I)." [*Towslee Dec.*, Dkt. #15, Ex.C]. The Council voted 5-2 to file a Land Use Petition Act (LUPA) appeal in Superior Court of the Hearing Examiner's final decision. *Id*.

---

[1] The Ordinance 1073 was ultimately codified at GHMC 19.05.010.

Plaintiffs argue that this meeting violated their rights in three ways.  First, Plaintiffs claim that because the Council took the vote immediately upon its return from the closed executive meeting, Plaintiffs were precluded from commenting before the appeal.  [*Plaintiffs' Response*, Dkt. #22, at 5; *Jorgenson Dec.,* Dkt. #23, at 3].  In response, the City argues that the public is allowed to comment at every council meeting. [*Defendants Motion for Summary Judgment on Immunity*, Dkt. # 13 at 4-5].  Second, Plaintiffs claim that a letter that Hunt Skansie prepared and delivered to the City Clerk on February 7, 2007, was never included in the Council's materials for that meeting.  Plaintiffs have failed to present admissible evidence establishing this; they have not, for example, provided a copy of the letter.  [*Plaintiffs' Response*, Dkt. #22, at 4].  In response, Defendants deny any knowledge of any letter submitted to the City on that date.  [*Towslee Dec*., Dkt. # 15, at 2; *Second Towslee Dec*., Dkt. #36, at 3].  Finally, Plaintiffs argue that the City Attorney blocked their access to the Council by advising the Mayor and the Council via email not to discuss the potential appeal of the Hearing Examiner's decision:

> Because there is a possibility that the Council may vote to appeal [the Hearing Examiner's decision on the Courtyards development], you should not discuss this matter with anyone at this time.  You also should not return e-mails or letters on this matter.  If anyone asks to address the Council and Mayor on this issue at the next Council meeting (as a matter that is not on the agenda), you may allow that person to speak, but you should not respond in any way to the comments from the public.  Of course, you should not discuss this with any reporters. . . .  If the Council does not vote to appeal the Courtyards at Skansie, then . . . AFTER . . . February 15, 2007, you may answer e-mails, have conversations or return letters regarding the Courtyards . . . .

[*Towslee Dec.*, Dkt. #15, Ex. B].

The City appealed the Hearing Examiner's decision in Pierce County Superior Court, seeking reversal of the Hearing Examiner's density ruling.  [*Morris Dec.*, Dkt. #14, Ex. J].  NPD also appealed, seeking reversal on the open space issue.  *Id*. Ex. I.  Although the LUPA allows any party to apply for a stay,[2] neither the City nor NPD requested one.  *Id*. Ex. I at 6; Ex. J at 20.

On August 10, 2007, the Superior Court ruled in favor of NPD on both issues, affirming the Hearing

---

[2] *See* RCW 36.70C.100.

ORDER
Page - 4

Examiner's interpretation of the GHMC on the density issue, and reversing his decision on the open space issue. [*Second Declaration of Carol A Morris in Support of Defendants' Motion for Partial Summary Judgment on Immunity,* (hereinafter *Second Morris Dec.*), Dkt. #33, at Ex. A).

On September 24, 2007, the Council again entered into a closed executive session and returned to vote 7-0 to appeal the Superior Court's decision to the Court of Appeals. Although RCW 36.70C.100 and the Rules on Appeal allow either party to request a stay, neither the City nor NPD requested one.

On June 9, 2008, the Council adopted Ordinance 1131, which amended the PRD regulations to clarify the density and open space requirements for future proposed developments. [*Towslee Dec.*, Dkt #15, Ex. B, at 4]. The City argues that these clarifications were made in response to the Hearing Examiner's "misinterpretation" of the PRD regulations. [*Defendants' Motion for Summary Judgment on Immunity*, Dkt. #13, at 6].

On March 3, 2009, the Court of Appeals affirmed the Superior Court decision, affirming the Hearing Examiner's decision on the density issue, and reversing his decision on the open space issue. *See City of Gig Harbor v. North Pacific Design*, 149 Wn. App. 159, 201 P.3d 1096 (2009).

On March 9, 2009, the Council again entered into a closed executive session and voted 7-0 to seek reconsideration of the Court of Appeals decision. The City's motion was denied. [*Morris Dec.*, Dkt. #14, Ex. P]. On May 26, 2009, the Council once more entered into a closed executive session, and voted 5-2 to seek review by the Washington State Supreme Court.

On July 23, 2009, NPD filed a motion for a retroactive stay with the Court of Appeals. *Id.* Ex. L. NPD sought a stay retroactive to the date of the Hearing Examiner's decision, January 24, 2007. *Id*. Because NPD did not act on its permit(s), or request a stay or extension of the conditional use permit until this date, the retroactive stay would have allowed Plaintiffs to revive the conditional use permit that had expired on January

27, 2008,[3] thereby allowing them to avoid re-filing their development plans under the Council's newly amended PRD code rule. *Id*. The City did not oppose the retroactive stay sought by NPD. *Id*. Ex. N, at 1. The Supreme Court denied both the City's Petition for Review and NPD's Motion for Retroactive Stay filed with the Court of Appeals. *Id*. Ex. O.

On December 28, 2009, Plaintiffs filed this action in Pierce County Superior Court, naming the City and members of the Council and their marital communities as defendants. [*Notice of Removal*, Dkt. #1]. The Complaint alleges both federal and state causes of action. Plaintiff brings a 42 U.S.C. § 1983 claim for interference with, and deprivation of, Plaintiffs' constitutional rights to due process, contract, equal protection, and petition their government. Plaintiffs also assert claims for deprivation of rights secured by the Washington Constitution, as well as claims for tortious interference with a business expectancy and negligence/promissory estoppel. [*Complaint*, Dkt. #1, Ex. A, at 11-13]. Plaintiffs do not bring any claims under LUPA.

Defendants removed the action to federal court under 28 U.S.C. § 1441 on the basis of the federal question presented in Plaintiffs' allegations under 42 U.S.C. § 1983. [*Notice of Removal*, Dkt. #1]. Plaintiffs filed this motion to Remand and Abstain on February 18, 2010. [Dkt. # 16]. Because the date of Defendants' removal is disputed, the timeliness of Plaintiffs' motion to remand is at issue. Plaintiffs claim that because they did not receive notice of Defendants' removal until January 20, 2010, the removal documents were not "completely filed" until January 20, 2010, making their motion to remand timely. [*Id*. at 4; *Second Declaration of Patrick A. Palace in Support of Plaintiffs' Motion to Remand and Abstain*, Dkt. #38, at 2, 3]. Defendants, on the other hand, contend that they filed their removal documents on January 15, 2010, thus rendering Plaintiffs' motion to remand untimely. [*Defendants' Response to Plaintiffs' Motion to Remand*, Dkt. #29, at 9]. The Court's electronic filing system indicates that all removal documents were filed with the

---

[3]Defendants point out that a conditional use permit "shall expire if not exercised within one year of the date of approval." GHMC 17.64.050.

ORDER
Page - 6

Court on January 15, 2010, but entered into the system on January 20, 2010.  [*Motion to Remand*, Dkt. #16, Ex. 1; *Second Palace Dec.*, Dkt. #38, App. A].

**ANALYSIS**

**I.    Defendants' Motion for Summary Judgment**

Plaintiffs' Complaint alleges that the individual Council members "have deprived Plaintiffs' [sic] of their right to property, to due process, to contract, to equal protection, and to petition their government, and have further and otherwise violated Plaintiffs' fundamental rights" under the U.S. Constitution. Plaintiffs also claim that the Council tortiously interfered with their business expectancies by filing appeals.  Finally, Plaintiffs assert claims for negligence and/or promissory estoppel for "consistently represent[ing]" that the City and Plaintiffs agreed on the density issue, causing the Plaintiffs to reasonably rely on those representations.  [*Complaint*, Dkt. #1, Ex. A].

The individual defendants, past and present members of the Council and their marital communities, ask this Court to dismiss Plaintiffs' § 1983 claims against them because they are either absolutely or qualifiedly immune from liability for any alleged constitutional deprivations.  The Council members also ask for summary judgment dismissal of Plaintiffs' tortious interference claim because (1) Plaintiffs cannot prove that any alleged interference was improper, and (2) the Council members enjoy discretionary immunity for their decision to appeal the Hearing Examiner's decision.  Finally, the Council members ask the Court to dismiss Plaintiffs' negligence/promissory estoppel claim because Plaintiffs cannot demonstrate that the Council owed a duty to Plaintiffs not to appeal the Hearing Examiner's decision.

**A.    Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file,

"specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B.    42 U.S.C. § 1983 Claims

Plaintiffs argue that the Council delayed their progress and prevented them from developing the Courtyards, thereby violating their constitutional rights and causing "foreseeable economic consequences." Specifically, Plaintiffs argue that the Council: (1) improperly considered and adopted ordinances in reaction to the Hunt Skansie controversy; (2) improperly appealed the Hearing Examiner's decision; and (3) prevented Plaintiffs from speaking at Council meetings or otherwise communicating with Council members.

#### (1)    Absolute Immunity

"Local legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Courts consider four factors to determine whether a local legislator's activity is legislative for purposes of absolute immunity:

> (1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation.

*Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003). These factors are not mutually exclusive; "whether an act is ad hoc can depend on whether it is aimed at a few people or many, and whether an act bears all hallmarks of traditional legislation can depend on whether it is ad hoc." *Id*.

The Council members argue that they are entitled to absolute immunity for considering and adopting ordinances drafted in response to the Hearing Examiner's approval of the Courtyards proposed development.

The record reveals two relevant ordinances adopted by the Council. Ordinance 1073, which was considered and tabled on January 29, 2007, and subsequently adopted on February 26, 2007, allows the Council to order reconsideration of the Hearing Examiner's decision. Ordinance 1131, which was adopted on June 9, 2008, amended the PRD regulations to clarify the density and open space requirements. The timing and content of these ordinances suggest that they were considered and adopted in reaction to the Hunt Skansie controversy.

But the Court need not delve into the motives of the Council because here the ordinances bear all the hallmarks of traditional legislation. "Whether an act is legislative turns on the nature of the act, rather than the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. It is well-settled that adoption of an ordinance is a legislative act for purposes of immunity. *See Kuzinich v. County of Santa Clara*, 689 F.2d 1345, 1349 (9th Cir. 1982). This is true even if the city council has devised an ordinance specifically targeting one party. *See Bogan,* 523 U.S. at 54-55. Moreover, the adoption of an ordinance, unlike the denial of a particular permit, may have prospective implications that reach well beyond the permitting of Plaintiffs, affecting the public at large. Indeed, the Council never used Ordinance 1073 to seek reconsideration of the Hearing Examiner's decision in this case. Nor has the Council ever argued that Ordinance 1131 applies to the Courtyards proposed development.

When the Council considered and subsequently adopted ordinances in reaction to the Hunt Skansie controversy, they were engaged in legislative acts entitling them to immunity for those acts. Defendants Motion for Summary Judgment on absolute immunity is **GRANTED**. Plaintiffs' § 1983 claims against the individual defendants and their marital communities based on the Council's consideration and adoption of Ordinances 1073 and 1131 are **DISMISSED WITH PREJUDICE**.

**(2)   Qualified Immunity.**

Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982). In analyzing a qualified immunity defense, the Court must determine first, whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and then, whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Id*. The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id.*

The Supreme Court has recently held "that the *Saucier* protocol should not be mandatory in all cases . . . [but] it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In this case it is beneficial to first determine whether a constitutional right was violated before moving to the second question of whether the right was clearly established.

Plaintiffs argue that the Council's appeal of the Hearing Examiner's decision deprived Plaintiffs of a property interest in their permits. This argument fails for three reasons. First, Plaintiffs cannot demonstrate that they were deprived of a constitutionally protected liberty or property interest in their permits. *See Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 1994) (recognizing that a plaintiff must demonstrate a deprivation of a constitutionally protected liberty or property interest to establish a procedural due process violation). It is true that if Council's appeal had been upheld, Plaintiffs would not have been allowed to construct more than eight dwelling units per acre on its property. In reality, however, the Superior Court ruled in Plaintiffs' favor, affirming the Hearing Examiner's decision to conditionally approve Plaintiffs permits, and allowing them to construct more than eight dwelling units per acre. The Court of Appeals affirmed the Superior Court decision, and the Supreme Court denied review. The Council did nothing to prevent Plaintiffs from developing their property while the appeals were pending, and did not even oppose Plaintiffs' request for a

Page - 10

retroactive stay to revive the expired permits. Thus, Plaintiffs could have proceeded with the development at any time after the Hearing Examiner issued his final decision. They did not. Any alleged deprivation was Plaintiffs' own, and cannot be attributed to the Council.

Second, even if the Council's appeal of the Hearing Examiner's decision had been upheld (thus precluding Plaintiffs from constructing more than eight dwelling units per acre), Plaintiffs provide no authority wherein a government entity's appeal of a land use decision deprived an adverse party of any constitutional rights. This Court declines the invitation to establish such dangerous precedent.

Third, the Council, as a governmental entity, is authorized by law to file a LUPA appeal of a Hearing Examiner's decision in Superior Court. *See Chelan County v. Nykriem*, 146 Wn.2d 904, 933-34, 52 P.3d 1 (2002); *see also* GHMC 19.06.003(B)(4). Aside from Plaintiffs' bald assertion that the Council's various appeals were a series of attempts to stop Plaintiffs from developing their preliminary plat,[4] Plaintiffs have failed to demonstrate that the Council's appeal amounted to a constitutional violation or that the Council's appeal was otherwise an abuse of process or frivolous.[5] This assertion is insufficient to survive summary judgment. *See FTC v. Stefanchick*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both legally insufficient to withstand summary judgment.").

As a last-ditch effort to salvage their constitutional claim, Plaintiffs argue that the Council's appeal of the Hearing Examiner's decision was based upon public pressure opposing the development, a basis Plaintiffs maintain, is improper. To support this proposition, Plaintiffs cite to *Marantha Mining v. Pierce County*, 59 Wn. App. 795, 804, 801 P.2d 985 (1990) (recognizing that "[c]ommunity displeasure cannot be the basis of a permit denial"). That case is inapplicable. There, the Hearing Examiner's decision to grant

---

[4] Plaintiffs' declaration flatly asserts: "It was our belief that the City's appeal to the Supreme Court was simply another attempt to stop this plat when the previous City appeals failed to stop the plat approval." [*Jorgenson Dec*., Dkt. #23 at 4].

[5] Any suggestion that the Council's appeal of the Hearing Examiner's decision was frivolous should have been raised during resolution of the LUPA claim in state court.

or deny the permit, although final, was subject to appeal to the city council.  Thus, the city council fulfilled an appellate role–it had authority to adopt, amend, or reject the Hearing Examiner's recommendation.  *Id*. Here, the Council has absolutely no appellate authority over the Hearing Examiner's recommendation, it only has authority to appeal to the Superior Court.  In this case, it was the Superior Court, not the Council, that had authority to review the Hearing Examiner's recommendation.

Plaintiffs also contend that they were blocked from any opportunity to directly communicate with Council members before the Council made its decision to appeal the Hearing Examiner's decision. Specifically, Plaintiffs complain that:  (1) the Council took the vote to appeal immediately upon its return from the executive session, (2) a letter they allege was prepared and delivered to the Council in preparation for the February 12, 2007 meeting was not included in the Council's materials,[6] and (3) City Attorney Carol Morris blocked their access to the Council by advising the Mayor and the Council via email not to discuss the potential appeal of the Hearing Examiner's decision.

Plaintiffs argue that these actions deprived them of an opportunity for some kind of a hearing before the Council appealed the Hearing Examiner's decision.  *Halverson v. Skagit County*, 42 F.3d 1257, 1260 (1995) ("Ordinarily, due process of law requires [notice and] an opportunity for some kind of a hearing *prior* to the deprivation of a significant property interest.").  However, as discussed above, Plaintiffs cannot demonstrate that the appeal deprived them of any constitutionally protected liberty or property interest.

Plaintiffs have failed to put forth any evidence or law demonstrating why the Council's actions violated their constitutional rights. Instead, Plaintiffs generally argue that summary judgment on Defendants' qualified immunity defense is premature because the facts have not yet been fully developed. [Dkt. #22, 13-15].  In the absence of a Fed. R. Civ. Proc. 56(f) motion for a continuance to enable further discovery, this is insufficient to withstand summary judgment.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475

---

[6]Plaintiffs have, however, failed to present any admissible evidence establishing that such a letter ever existed.

ORDER
Page - 12

U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence). There is no genuine issue of fact for trial where the record, taken as a whole, would lead a rational fact finder to find that a constitutional violation occurred. Even if Plaintiffs could establish that the Council's appeal of a land use decision violated their constitutional rights, those rights were not clearly established.

Defendants Motion for Summary Judgment on qualified immunity is **GRANTED**. The individual defendants and their marital communities are **DISMISSED WITH PREJUDICE**.

### C.     Tortious Interference

In addition to their 42 U.S.C. § 1983 claim, Plaintiffs allege that the Defendants tortiously interfered with their business expectancies. Plaintiffs' Complaint alleges that the Defendants "singled out" Plaintiffs' project and used "improper means to interfere with Plaintiffs' business expectancies through actions certain to cause delay and economic harm." [*Complaint*, Dkt.#1, Ex. A, at ¶¶ 5.2-5.4]. The record reveals that the only possible conduct on the part of the Defendants which could be a basis for Plaintiff's tortious interference claim is the Council's decision to appeal of the Hearing Examiner's decision.

To prove an interference with a business expectancy, a Plaintiff must show:

(1) The existence of a valid contractual or business expectancy;
(2) The defendant had knowledge of that relationship;
(3) There was an act of intentional interference inducing or causing breach or termination of the relationship or expectancy;
(4) The defendant interfered for an improper purpose or used improper means; and
(5) Resultant damages.

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351, 144 P.3d 276 (2006). "Interference with contractual relations is an intentional tort. . . . [T]he interference must be both intentional and improper." *Quadra Enterprises, Inc. v. R. A. Hanson Co., Inc.*, 35 Wn. App. 523, 527, 667 P.2d 1120 (1983).

The Council members argue that even if Plaintiffs were able to demonstrate that the Council's appeal interfered with a business expectancy, they simply cannot prove that the interference was improper. It is well-settled that no liability exists for an interference that is caused by a person who has a "definite, legal right to

act, without any qualification." *Topline Equipment, Inc. v. Stan Witty Land, Inc.*, 31 Wn. App. 86, 829, 639 P.2d 825 (1982). There is no question that the Council may exercise its right to file a LUPA appeal of a Hearing Examiner's decision in Superior Court. *See Chelan County v. Nykriem*, 146 Wn.2d 904, 933-34, 52 P.3d 1 (2002); *see also* GHMC 19.06.003(B)(4). Thus, the only conduct on the part of the defendants which was the basis for Plaintiff's tortious interference claim was the Council's appeal, which it had a definite legal right to do. Dismissal is appropriate where, "on the face of a complaint, it affirmatively appears that the defendant[s] [were] privileged to interfere." *Ulan v. Lucas*, 18 Ariz. App. 129, 130, 500 P.2d 914 (1972). Here, even assuming that Plaintiffs could prove that the Council interfered with some business expectancy, the Council was privileged to do so because it had an absolute right to appeal under law.

Plaintiffs argue that the Council's actions were improper because they "singled out" Plaintiffs and engaged in the same dilatory tactics to "block the project's development" as in *Westmark v. City of Burien*, 140 Wn. App. 540, 166 P.3d 813 (2007), *rev. denied* 163 Wn.2d 1055 (2008). But the Plaintiffs in that case based their tort claim on an unreasonable delay in making the original permit decision. In contrast, here, the permit decision had already been made, and Plaintiffs base their claim on a lawful decision to appeal the Hearing Examiner's decision. Furthermore, this case differs from *Westmark* because, as discussed, Plaintiffs cannot prove that the Council's appeal actually "blocked" the development. Plaintiffs were free to develop the property at any time after the Hearing Examiner issued his final decision.

Here, Plaintiffs have failed to put forth any evidence demonstrating that the Council's appeal of the Hearing Examiner's decision was an improper interference with their business expectancies. Nor have Plaintiffs put forth any evidence demonstrating that any other acts by the Council interfered with their business expectancies. Defendants Motion for Summary Judgment on Plaintiffs' tortious interference claims is **GRANTED**, and those claims against the individual defendants are **DISMISSED WITH PREJUDICE**.

### D. Negligence/Promissory Estoppel

Plaintiffs also claim that they "justifiably relied" on the Council's "consistent[] represent[ations]" that

the City agreed with Plaintiffs on the density issue. Plaintiffs argue that the Council's "abrupt reversal and actions in contradiction" to those assurances negligently damaged Plaintiffs. [*Complaint*, Dkt. #1, Ex. A, at ¶¶ 6.3-6.6]. It appears that the Plaintiffs' negligence/promissory estoppel claim is based the City's decision to dispute the density issue after agreeing to submit the project to the Hearing Examiner. The Council claims it is not liable for any alleged negligence under the public duty doctrine because it did not owe a duty to Plaintiffs to refrain from filing an appeal of the Hearing Examiner's decision.

Under the public duty doctrine, a government entity is not liable for negligence unless the entity owes a duty to the individual plaintiffs, rather than to the public in general. *West Coast v. Snohomish County*, 112 Wn. App. 200, 207, 48 P.3d 997 (2002). There are four exceptions to the public duty doctrine, including (1) legislative intent; (2) failure to enforce; (3) the rescue doctrine; and (4) a special relationship. *Id.*

Plaintiffs argue that the special relationship exception applies here. Under this exception, a "special relationship arises where (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give rise to justifiable reliance on the part of the plaintiff." *Id*. (*quoting Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 786, 30 P.3d 1261 (2001)). The government may only be liable "where a direct inquiry is made by an individual and incorrect information is clearly set forth by the government, the government intends that it be relied upon and it is relied upon by the individual to his detriment." *Id*. (*quoting* 144 Wn.2d 774, 786, 30 P.3d 1261 (2001)).

Plaintiffs claim that the parties initially differed only on their interpretation of the GHMC's "open space" definition, and that the City consistently supported Plaintiffs' density increase. Plaintiffs claim that six days after the Hearing Examiner's hearing, the City suddenly changed its position on the density issue, and maintained that position throughout the LUPA appeal process. Plaintiffs argue that they had invested substantial time and resources into the proposal, reasonably relying on the City's assurances.

However, Plaintiffs fail to identify, and the Court has not located in the record, any "express

assurances" given by the Council that it would not appeal the Hearing Examiner's decision. Plaintiffs identify an alleged "verbal agreement" between Thair Jorgenson (Project Manager for the Courtyards proposed development) and the City Planning Director, during which Jorgenson claims that the two "decided to leave the issue to the Hearing Examiner's interpretation and . . . were willing to live with whatever decision he came to." [*Jorgenson Dec*., Dkt. #23, at 5]. This "verbal agreement" cannot be attributed to any of the Council members.

Plaintiffs also identify a letter from former City Attorney Carol Morris, which they claim "disavowed" the City's prior assurances that it would not dispute the density issue. [*Morris Dec.*, Dkt. #14, Ex. F]. At most, this letter demonstrates that the City changed its position on the density issue after discovering a new legal theory. Even if Plaintiffs could establish that they relied on this letter to their detriment, nothing in the record establishes that (1) Plaintiffs made a direct inquiry to the Council, (2) the Council clearly set forth incorrect information, or (3) the Council intended Plaintiffs to rely on that information, all of which are required to establish a "special relationship."

In any event, Plaintiffs have failed to demonstrate that the Council's decision to file an appeal was the proximate cause of any alleged damages. The Council did nothing to prevent Plaintiffs from developing their property while the appeals were pending, and did not even oppose Plaintiffs' request for a retroactive stay to revive the expired permits. Thus, Plaintiffs could have proceeded with the development at any time after the Hearing Examiner issued his final decision. They did not. Any alleged damages cannot be attributed to the Council.

Defendants Motion for Summary Judgment on Plaintiffs' negligence/promissory estoppel claims is **GRANTED**, and those claims against the individual defendants are **DISMISSED WITH PREJUDICE**.

### II.     Plaintiffs' Motion to Remand and Abstain

Plaintiffs ask the Court to remand the state law claims to Pierce County Superior Court, and abstain on the remaining 42 U.S.C. § 1983 claims pending resolution of those state court claims in Pierce County

Superior Court. Defendants argue that abstention is improper because the Pullman Abstention Doctrine does not apply in this case.

As an initial matter, Defendants argue that the Plaintiffs' motion to remand is untimely. A motion to remand a case to state court "on the basis of any defect other than subject matter jurisdiction must be made within 30 days after the filing of a notice of removal under Section 1446(a)." 28 U.S.C. § 1447(c). Plaintiffs filed this motion to Remand and Abstain on February 18, 2010. Plaintiffs claim that Defendants' removal documents were completely filed on January 20, 2010, making their motion to remand timely. Defendants, on the other hand, argue that they filed their removal documents on January 15, 2010, thus rendering Plaintiffs' motion to remand untimely.

Although Plaintiff claims that this delay was a result of Defendants' failure to perfect filing, the docket entry suggests that any delay was the Court's, not Defendants. The Court's electronic filing system indicates that all removal documents were filed with the Court on January 15, 2010, but entered into the Court's electronic filing system on January 20, 2010. Plaintiffs claim that they did not receive the pleadings until January 20, 2010, via both email and regular mail. The effect of this late entry was to delay notification of the removal materials for five days, after the federal holiday.

The timeliness of Plaintiffs' motion to remand and abstain, however, is largely irrelevant. Even assuming that the motion to remand was timely, the Court declines to remand Plaintiffs state law claims, and abstain on the remaining 42 U.S.C. § 1983 claims because Pullman Abstention Doctrine does not apply.

Under the Pullman Abstention Doctrine, district courts may postpone the exercise of federal jurisdiction if three requirements are satisfied:

(1) The issues raised in the case involve a sensitive area of social policy.
(2) A definitive ruling on the state law issue by a state court could obviate the need for adjudication of the constitutional issues by the federal court.
(3) The proper resolution of any potentially determinative state law is uncertain.

*Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir. 1984).

Plaintiffs argue that the first criterion is met because this case involves land use planning. Specifically, Plaintiffs argue that Defendants used their "land use regulatory power to delay, deter and prohibit the permitting and construction" of the Courtyards. [*Motion to Remand*, Dkt. #16, at 6]. It is true that "land use planning is a sensitive area of social policy that meets the first requirement for Pullman abstention." *See Kollsman*, 737 F.2d at 833. But this is not a land use question. Here, Plaintiffs do not bring any LUPA claims or seek any further review of the Hearing Examiner's decision. Rather, Plaintiffs point to several grievances–none of which involve a land use determination–which they believe were unconstitutional and tortiously interfered with their business expectancies. Although the cause of action "arises out of a land use permitting case," this action is about constitutional and tort law, not LUPA violations. [*Motion to Remand*, Dkt. #16, at 11]. In short, no "land use regulatory power" was in use here.

Plaintiffs have failed to establish the first requirement in the Pullman Abstention Doctrine. Nor have Plaintiffs established that the resolution of the state law tort claims could obviate the need for adjudication of the § 1983 claim against the City that remains in federal court. Plaintiffs' Motion to Remand and Abstain is therefore **DENIED**.

### III.     Supplemental Jurisdiction.

Having dismissed all 42 U.S.C. § 1983 claims against individual council members and their marital communities, the Court must determine whether to exercise supplemental jurisdiction over the remaining state law claims.

Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy. The Court may decline to exercise this supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining

jurisdiction.  28 U.S.C. § 1367(c).

Although the Court has dismissed all § 1983 claims against individual Council members and their marital communities, a § 1983 claim against the City remains as the basis for original subject matter jurisdiction in this Court.  Thus, the Court will assume supplemental jurisdiction over the state law claims because they are so factually related to the § 1983 claim against the City that they form the same case or controversy.

## CONCLUSION

Defendants' Motion for Partial Summary Judgment on Immunity [Dkt. # 13] is **GRANTED**. Plaintiffs' § 1983, tortious interference, and negligence claims against the individual defendants are **DISMISSED WITH PREJUDICE**.   Plaintiffs' Motion to Remand and Abstain [Dkt. # 16] is **DENIED**. This Court retains jurisdiction over the § 1983 claims against the City of Gig Harbor, and will exercise supplemental jurisdiction over remaining state law claims.

Dated this 17th day of May, 2010.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE