HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HUNT SKANSIE LAND, LLC and
RUSHTALMO LLC, Washington Limited
Liability Companies,

                Plaintiffs,

    v.

THE CITY OF GIG HARBOR,

                Defendants.

Case No. C10-5027RBL

ORDER GRANTING SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment [Dkt. #51]. The Court has reviewed the materials for and against said motion and has heard oral argument from counsel. For the following reasons, the Motion for Summary Judgment is **GRANTED.**

## FACTS

Plaintiffs owned land upon which they planned to build a development called the Courtyards at Skansie Park ("Courtyards"), a 174-lot single-family home subdivision and Planned Residential Development (PRD) on 18.8 acres of property. On March 23, 2006, North Pacific Design ("NPD") applied on behalf of plaintiffs for a permit to build the Courtyards development. [*1st Declaration of Carol*

ORDER
Page - 1

*A. Morris in Support of Defendants' Motion for Partial Summary Judgment on Immunity*, (hereinafter *Morris Dec.*), Dkt. #14, Ex. A]. The Gig Harbor Municipal Code (GHMC) allows a maximum density of 8 residential units per acre in a PRD. However, that density may be increased to 12 units per acre under a conditional use permit. NPD's preliminary plat proposed a density of 11.75 dwelling units per acre, which could only be achieved by reducing the lot size and yard setbacks of traditional PRDs. Thus, NPD also sought a reduced setback space, which was inconsistent with GHMC's open space requirement. [*Morris Dec.*, Dkt. #14, Ex. A, at i].

The City Planning Staff recommended approval of the preliminary plat despite NPD's density and open space requests. [*Morris Dec.*, Dkt. #14, Ex. D]. According to the Planning Staff, the density increase (from 8 to 11.75 dwelling units per acre) could be achieved with a conditional use permit, but only if NPD complied with GHMC's open space requirements, of which the proposal was "approximately 26,382 square feet short." *Id*. at 9, 14.

Both parties agreed to submit the project to the Hearing Examiner for an "open record hearing," which was held on December 13, 2006. [*Morris Dec.*, Dkt. #14, Ex. H]. NPD disputed the City Planner's interpretation of the GHMC that required NPD to revise the preliminary plat to comply with open space requirements. Thus, initially, the only disputed issue for the Hearing Examiner was the conflicting interpretations of the GHMC's definition of open space. [*Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment,* (hereinafter *Plaintiffs' Response*), Dkt. #22 at 3]. But on December 19, 2006, the City changed its position, arguing that the City Planner erred in concluding that a conditional use permit could be used to increase density in a PRD. [*Morris Dec.*, Dkt. #14, Ex. F]. The City did not object to the Hearing Examiner "leaving the record open" to receive a response from NPD on the density issue. *Id*. The Hearing Examiner allowed briefing from both sides on the issue, and considered both in his decision. *See id.* Ex. F, G, H.

Page - 2

The Hearing Examiner issued a final decision on January 27, 2007, conditionally approving NPD's applications for preliminary plat, PRD, and conditional use permits, but requiring NPD to comply with the City's open space requirements. [*Morris Dec*., Dkt. #14, Ex. H]. Thus, the Hearing Examiner ruled in favor of NPD on the density issue, but in favor of the City on the open space issue.

At their January 29, 2007 meeting, the Council considered a draft ordinance (Ordinance 1073) that would allow the Council to request reconsideration of a hearing examiner's decision immediately after the open record public hearing. The Council considered the ordinance under RCW 36.70A.390's emergency adoption process, which does not require a public hearing or public input before adoption. [*First Declaration of Molly Towslee in Support of Defendants' Motion for Partial Summary Judgment on Immunity* (hereinafter *Towslee Dec.*), Dkt. # 15, Ex. A]. The emergency ordinance was tabled at the January 29, 2007 meeting, and was subsequently passed on February 26, 2007.[1] [*Thair Jorgenson's Declaration in Support of Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment*, (hereinafter *Jorgenson Dec*.), Ex.C, at 3]. However, the City never used Ordinance 1073 to request reconsideration of the Hearing Examiner's decision on the Courtyards development.

On February 12, 2007, the Council met in a closed executive meeting "[f]or the purpose of discussing potential litigation per RCW 42.30.110(1)(I)." [*Towslee Dec.*, Dkt. #15, Ex.C]. The Council voted 5-2 to file a Land Use Petition Act (LUPA) appeal in Superior Court of the Hearing Examiner's final decision. *Id*. Plaintiffs argue that this meeting violated their rights in three ways. First, plaintiffs claim that because the Council took the vote immediately upon its return from the closed executive meeting, plaintiffs were precluded from commenting before the appeal. [*Plaintiffs' Response*, Dkt. #22, at 5; *Jorgenson Dec.,* Dkt. #23, at 3]. In response, the City argues that the public is allowed to comment at every council meeting. [*Defendants Motion for Summary Judgment on Immunity*, Dkt. # 13 at 4-5].

---

[1] Ordinance 1073 was ultimate codified at GHMC 19.05.010.

ORDER
Page - 3

Second, plaintiffs claim that a letter that Hunt Skansie prepared and delivered to the City Clerk on February 7, 2007, was never included in the Council's materials for that meeting. Plaintiffs have failed to present admissible evidence establishing the existence or delivery of the letter. They have not, for example, provided a copy of the letter. [*Plaintiffs' Response*, Dkt. #22, at 4]. In response, defendants denied any knowledge of any letter submitted to the City on that date. [*Towslee Dec.*, Dkt. # 15, at 2; *Second Towslee Dec.*, Dkt. #36, at 3]. Finally, plaintiffs argue that the City Attorney blocked their access to the Council by advising the Mayor and the Council via email not to discuss the potential appeal of the Hearing Examiner's decision:

> Because there is a possibility that the Council may vote to appeal [the Hearing Examiner's decision on the Courtyards development], you should not discuss this matter with anyone at this time. You also should not return e-mails or letters on this matter. If anyone asks to address the Council and Mayor on this issue at the next Council meeting (as a matter that is not on the agenda), you may allow that person to speak, but you should not respond in any way to the comments from the public. Of course, you should not discuss this with any reporters. . . . If the Council does not vote to appeal the Courtyards at Skansie, then . . . AFTER . . . February 15, 2007, you may answer e-mails, have conversations or return letters regarding the Courtyards . . . .

[*Towslee Dec.*, Dkt. #15, Ex. B].

The City pursued its LUPA appeal of the Hearing Examiner's decision in Pierce County Superior Court, seeking reversal of the Hearing Examiner's density ruling. [*Morris Dec.*, Dkt. #14, Ex. J]. NPD also appealed, seeking reversal on the open space issue. *Id*. Ex. I. Although the LUPA allows any party to apply for a stay,[2] neither the City nor NPD requested one. *Id*. Ex. I at 6; Ex. J at 20.

On August 10, 2007, the Superior Court ruled in favor of NPD on both issues, affirming the Hearing Examiner's interpretation of the GHMC on the density issue, and reversing his decision on the open space issue. [*Second Declaration of Carol A Morris in Support of Defendants' Motion for Partial*

---

[2] *See* RCW 36.70C.100

ORDER
Page - 4

*Summary Judgment on Immunity,* (hereinafter *Second Morris Dec.*), Dkt. #33, at Ex. A).

On September 24, 2007, the Council again held a closed executive session, and returned to vote 7-0 to appeal the Superior Court's decision to the Court of Appeals. Although RCW 36.70C.100 and the Rules of Appellate Procedure allow either party to request a stay, neither the City nor NPD requested one. On June 9, 2008, the Council adopted Ordinance 1131, which amended the PRD regulations to clarify the density and open space requirements for future proposed developments. [*Towslee Dec.*, Dkt #15, Ex. B, at 4]. The City argues that these clarifications were made in response to the Hearing Examiner's "misinterpretation" of the PRD regulations. [*Defendants' Motion for Summary Judgment on Immunity*, Dkt. #13, at 6].

On March 3, 2009, the Court of Appeals affirmed the Superior Court's decision, affirming the Hearing Examiner's decision on the density issue, and reversing his decision on the open space issue. *See City of Gig Harbor v. North Pacific Design*, 149 Wn. App. 159, 201 P.3d 1096 (2009).

On March 9, 2009, the Council again entered into a closed executive session and voted 7-0 to seek reconsideration of the Court of Appeals decision. The City's motion was denied. [*Morris Dec.*, Dkt. #14, Ex. P]. On May 26, 2009, the Council once more entered into a closed executive session, and voted 5-2 to seek review by the Washington State Supreme Court.

On July 23, 2009, NPD filed a motion for a retroactive stay with the Court of Appeals. *Id*. Ex. L. NPD sought a stay retroactive to the date of the Hearing Examiner's decision, January 24, 2007. *Id*. Because NPD did not act on its permit(s), or request a stay or extension of the conditional use permit until this date, the retroactive stay would have allowed plaintiffs to revive the conditional use permit that had expired on January 27, 2008,[3] thereby allowing them to avoid re-filing their development plans under the Council's newly amended PRD code. *Id*. The City did not oppose the retroactive stay sought by NPD. *Id*.

---

[3]Defendants point out that a conditional use permit "shall expire if not exercised within one year of the date of approval." GHMC 17.64.050.

Ex. N, at 1. The Supreme Court took up the NPD's motion and denied both the City's Petition for Review and NPD's Motion for Retroactive Stay filed with the Court of Appeals. *Id*. Ex. O.

## **PROCEDURAL HISTORY**

Plaintiffs initiated this action in Pierce County Superior Court on December 28, 2009. Named defendants included the City of Gig Harbor and members of the City Council and their marital communities. The Complaint alleged both federal and state causes of action arising out of the permitting process. Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441. [Dkt. #1].

Defendants promptly moved for partial summary judgment on behalf of all individual defendants, arguing that their actions in connection with the permitting process were either absolutely or qualifiedly privileged. [Dkt. #13]. Shortly thereafter, plaintiffs brought a motion to remand their state law claims back to state court, and asking this Court to abstain from deciding the claims the plaintiffs brought under the United States Constitution. On May 13, 2010, the Court granted the defendants' motion for partial summary judgment, and denied the plaintiffs' motions to remand and for abstention. [Dkt. #49].

On May 19, 2010, plaintiffs moved to amend their complaint. On May 20, 2010, the City of Gig Harbor (the only remaining defendant) brought this motion for summary judgment.[4] The same day, plaintiffs moved to remand the remaining claims back to state court. [Dkt. #57]. On June 4, 2010, plaintiffs asked for time to conduct discovery pursuant to F.R. Civ. P. 56(f) [Dkt. #61].

On July 1, 2010, the Court granted the Motion to Amend, denied the Motion to Remand and granted the Rule 56(f) motion. [Dkt. #76].

The Amended Complaint asserts two causes of action against the City of Gig Harbor: Tortious Interference with Business Expectancies and Equitable Estoppel/Negligence. [Dkt. #77]. These causes of action are the subject of Defendant's Motion for Summary Judgment.

---

[4]Included in the motion was a request for reconsideration of alleged "findings" made by the Court in connection with its order granting partial summary judgment [Dkt. #49]. Since the Court did not (and could not) make factual findings of any kind on summary judgment, plaintiffs Motion for Reconsideration is **DENIED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## ANALYSIS

Plaintiffs claim that defendant caused them damage by delaying the issuance of permits to build their planned real estate development. The only actions taken by defendant that could have resulted in delay of the issuance of permits and the immediate commencement of construction of the project were the defendant's decisions to exercise appellate rights before the Pierce County Superior Court, the Court of Appeals and the Washington State Supreme Court between February 12, 2007 (14 days following the final decision of the Hearings Examiner) and May 26, 2009 (the date the Council voted to seek review by the State Supreme Court).

At the heart of plaintiffs' claim of entitlement is their assertion that they had an agreement with the City that the parties would submit the disputed open space issue to the Hearings Examiner and that both sides would abide the examiner's decision as to all relevant findings, without an appeal. The person allegedly entering into this agreement for the City was its Planning Director, Tom Dolan. In a declaration

filed with this Court under penalty of perjury, Dolan states:

> "At no time during my discussions with Mr. Jorgenson did I state or imply that the City would or would not appeal the hearing examiner's final decision on the preliminary plat or conditional use permit."

[Dkt. #115, 11-12-10]. For his part, Thair Jorgenson, the plaintiffs' participant in the alleged agreement, says in his declaration (also under penalty of perjury):

> "Because the open space issue remained unresolved, on November 14, 2006, I once again contacted the City to schedule a meeting with Ms. Undem and Mr. Dolan to discuss how to proceed with the application. On November 15, 2006, I had a brief meeting with Ms. Undem and Mr. Dolan to discuss this issue, and how to approach it in the very short time line we had. At the meeting, Mr. Dolan said that if it [sic] he was me, he would proceed to the hearing and present the open space issue to the hearing examiner and let him have the final interpretation of the code, and if he ruled in our favor the City (I assume he was speaking for staff), they would accept it and I said we would do the same."

[Dkt. #107, 11-05-10].

**I.    Equitable Estoppel/Negligence.**

Equitable estoppel requires (1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement or act by the other party; and (3) injury to the relying party if the court permits the first party to repudiate the admission, statement, or act. *Layman v. Department of Ecology*. A claim for negligent misrepresentation must be established by clear, cogent and convincing evidence. *West Coast, Inc. v. Snohomish County*, 112 Wash. App. 200, 210 (2002). Washington has adopted the Restatement (Second) of Torts elements of negligent misrepresentation:

> One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. The plaintiff must prove each element the cause of action with clear, cogent, and convincing evidence.

*Mann v. Household Finance Corp, III*, 109 Wash. App. 387, 391 (2001).

The critical question in this case is whether Thair Jorgenson and the plaintiffs could reasonably rely upon the words of Tom Dolan to guarantee an unobstructed path to project approval from the City of Gig Harbor. No reasonable person could construe the words spoken, combined with the status of the speaker, to reach the conclusion now advocated by plaintiffs. Tom Dolan is a Planning Director. He worked <u>for</u> the City of Gig Harbor but did not control the City of Gig Harbor. Plaintiffs knew as much. The City is governed by duly elected representatives called city council members. They and they alone set policy and decide litigation strategy for the City of Gig Harbor. When dealing with a municipal corporation, one must be presumed to have knowledge of the power and authority of the city official with whom they are dealing. *See Stoddard v. King County*, 22 Wn.2d 868, 883-884 (1945). Tom Dolan clearly did not have the authority to commit the City of Gig Harbor to future litigation strategy waiver of appellate rights, and the plaintiffs knew it.

Further, the subject matter of the conversation was the open space issue. The subject of the City's subsequent appeals was the overall density requirement and the use of a conditioned use permit to modify the density requirements of the GHMC. There is no evidence of any binding agreement by which any city official promised that the City would never disagree with plaintiffs' interpretation of density requirements or that the City would never appeal a Hearings Examiner's decision adopting plaintiffs' interpretation of the GHMC density requirements.

Tom Dolan did not commit the City of Gig Harbor to future litigation strategy. No reasonable juror could read the declaration of Thair Jorgenson and conclude that Tom Dolan ever made a representation of fact that could be relied upon by any developer to form a binding agreement regarding future conduct. The words spoken are at best equivocal and <u>may</u> express a personal opinion about what superior officers may or may not choose to do in the future. It is spurious to suggest that there was any reliance on the Dolan statement or that any reliance was justifiable, reasonable or plausible.

Plaintiffs have failed to establish that defendant, or its representative, made any statement of fact that plaintiffs could reasonably or justifiably rely upon. Claims for Equitable Estoppel or Negligence arising out of any statement by Tom Dolan to Thair Jorgenson are hereby **DISMISSED**.

## II. Tortious Interference With Business Expectancy.

In order to establish the basic elements of a tortious interference claim, plaintiffs must show:

> (1) the existence of a valid contractual relationship or business expectancy;
> (2) knowledge of the relationship or expectancy on the part of the interferor;
> (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Topline Equipment Inc. v. Stan Witty Land, Inc.,* 31 Wn. App. 86 (829) (1982). Intentional interference requires an improper objective or the use of wrongful means that in fact causes injury to the person's contractual relationship, and exercising in good faith one's legal interests is not improper interference. *See Leingans v. Pierce County Medical Bureau, Inc.,* 131 Wn.2d 133, 157 (1997).

The "improper" action alleged by plaintiffs in this case is the exercise of a lawful right of a party to any dispute to appeal an adverse ruling; due process rights guaranteed by the Constitution. The City of Gig Harbor, acting through its legally elected representatives, had a legally protected right to appeal the Hearings Examiner's decision to the Superior Court. It had the legally protected right to appeal the decision of the Superior Court to the Court of Appeals and to petition the Supreme Court for review of the adverse decision of the Court of Appeals. The fact that its appeal was rejected at every turn does not subject it to delay-related damages for their effort.

The Court is unaware of any case from the State of Washington or elsewhere, where the exercise of a right of appeal in a lawful proceeding gave rise to damages in tort. Plaintiffs' theory of "defensive abuse of process" is novel and not one to which this Court will subscribe.

//

//

## **CONCLUSION**

Defendant's Motion for Summary Judgment [Dkt. #51] is hereby **GRANTED**. Plaintiffs' Amended Complaint is **DISMISSED WITH PREJUDICE.**

Dated this 23rd day of December, 2010.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE